# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA JOAN ANDERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:16-cv-01009-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER PROCEEDINGS<br><br>(ECF No. 15, 18, 19) |

## I.

## INTRODUCTION

Plaintiff Patricia Joan Anderson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from anxiety disorder and panic disorder with agoraphobia. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 10.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on April 19, 2012. (AR 84.) Plaintiff's application was initially denied on August 10, 2012, and denied upon reconsideration on June 5, 2013. (AR 113-116, 119-123.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on September 18, 2014. (AR 24-69.) On December 30, 2014, the ALJ found that Plaintiff was not disabled. (AR 7-19.) The Appeals Council denied Plaintiff's request for review on May 9, 2016. (AR 1-3.)

### A. Hearing Testimony

Plaintiff appeared and testified at the September 18, 2014 hearing. (AR 30-63.) Plaintiff was born on March 31, 1971, and was forty-three years old on the date of the hearing. (AR 30.) Plaintiff lives in a house with her husband and two dogs. (AR 31.) Plaintiff has a twenty-seven year old son. (AR 35.) Plaintiff's husband is disabled, and the family's source of income is his disability and a pension from the county. (AR 31-32.) Plaintiff received state disability benefits from September 2011 to September 2012. (AR 32.)

Plaintiff has a driver's license and drives twice per week to the grocery store or to pick up mail at the communal mailboxes. (AR 33.) Plaintiff and her husband go out to dinner once a week and do a big shopping trip once a week. (AR 34.) They do errands together because they live about 15 minutes from the main shopping area. (AR 34.) In January, Plaintiff and her husband visited some friends in Havasu City, Arizona. (AR 34.) They travelled by car and it took about seven or eight hours to get there. (AR 34.) They stayed three to four days. (AR 35.) While they were there they went to a big antique and collectible show and a swap meet. (AR 35.)

Plaintiff received an associate degree in business in 1992. (AR 36.) Around 2000, Plaintiff took a class or two in finance for auto business through the Association of Finance and Insurance Professionals. (AR 36.) Plaintiff had a sales person license through the Department of Motor Vehicles. (AR 37.) Plaintiff worked for Rio Vista Chevrolet and C & M Chevrolet. (AR

37-38.) Plaintiff was the new car inventory manager, internet manager, and at times the sales manager. (AR 41.) Plaintiff made sure that every vehicle was on the internet and priced correctly. (AR 41.) She would remove the vehicles from the internet when they sold. (AR 41.) She would order new cars, handle dealer trades, and keep everything with Chevrolet current. (AR 41.) When she was the sales manager she would work with the salesmen, price cars, do financing, etc. (AR 41.)

Plaintiff also worked at Target Media Partners, a weekly magazine, as a sales person. (AR 42.) She would go out to the dealers and sell them advertising. (AR 42.) If they purchased an ad she would take pictures and put the ad together. (AR 42.) When the art department was done with the ad, she would proof it to make sure it went into the magazine correctly. (AR 42.) After it was printed, she would take the magazine by so the purchaser could see the ad. (AR 42.) Plaintiff also worked for a radio conglomerate selling radio advertising for about six months. (AR 43.)

Plaintiff has applied for jobs since she stopped working in 2011. (AR 44.) She did not get an interview for one of the jobs. (AR 44.) She applied for an interviewed with Target Media Partners and they were ready to give her the job, but she got panic attacks and anxiety a couple of days before she was going to start and did not take the job. (AR 44.)

Plaintiff stopped working in 2011 after she was sitting home one evening and started not feeling well. (AR 38.) She was feeling foggy and dizzy and felt the same way the next morning. (AR 38.) On her way to work she went to the nearest hospital and they thought she was having a heart attack but then told her it was an anxiety attack. (AR 38-39.) Plaintiff has always been an anxious person, a perfectionist, and has OCD. (AR 39.) She had never had her symptoms go that far before. (AR 39.) She was given Xanax, sent home, and told to take the day off. (AR 39.) She tried to go back to work for a couple of days, but stated having symptoms immediately. (AR 39.) She went to her doctor and they gave her medication to bring her heart rate down and started her on anti-depressants, Xanax, and several other medications. (AR 39.) It took about six weeks to find the correct medications to stabilize her. (AR 40.) Plaintiff was agoraphobic, could not leave the house, could not drive, eat, or sleep. (AR 40.) Plaintiff never returned to work.

(AR 40.)

Plaintiff does not know what caused her to start having symptoms on the day she went to the hospital. (AR 41.) Plaintiff's symptoms are steadily getting better but are still there. (AR 40.) Plaintiff is learning to control them through cognitive behavioral therapy. (AR 40.) It is a genetic problem that her whole family has. (AR 40.) Plaintiff's father is agoraphobic and takes Zoloft. (AR 40.) Her sister is the worst right now and takes multiple medications and has been through rehab three times for taking too much medication. (AR 40.) Her sister is not even able to function. (AR 40.) Plaintiff's aunt also has panic attacks. (AR 40.)

Plaintiff is unable to work because of panic attacks. (AR 45.) Her heart will start racing and she gets sweaty and clammy. (AR 45.) Her head will get foggy, she gets dizzy and her fingers tingle. (AR 45.) She will have to go to the bathroom constantly. (AR 45.) That is what happened when she was offered the job with Target Media Partners. (AR 45.) She had to go to the bathroom every five minutes. (AR 45.)

When Plaintiff has a panic attack she goes to her living room and sits in a big, oversized chair with an ottoman. (AR 46.) She sits there because it is her safe place. (AR 46.) She will turn on music or the television so she has a distraction. (AR 46.) She will lie in the chair from five to thirty minutes to calm herself down. (AR 46.) It can take up to an hour before she is ready to go back to whatever she was doing. (AR 46.) Her panic attacks are very random and she will have them three times a week. (AR 46, 62-63.)

Plaintiff is constantly anxious and mornings can be worse than other times, especially if she does not get a good night's sleep. (AR 46-47.) Her anxiety is caused by fear of the unknown. (AR 47.) She is constantly on edge. (AR 47.) She has received cognitive therapy for her anxiety. (AR 47.) She is a quick learner and the things she has been taught help her. (AR 47.) She does not need to get treatment when she has a panic attack because she has learned how to check her blood pressure and calm herself down. (AR 54.) Plaintiff also takes Paxil, Benadryl, and Xanax. (AR 47-48.) Plaintiff also drinks two beers at night to help her sleep. (AR 48-49.) If she does not drink the beers she has a lot of racing thoughts at night. (AR 49.) Plaintiff sees the psychiatrist about every six weeks and they have just recommended that she

1 continue with the cognitive behavioral therapy. (AR 55-56.)

2 On an average day, Plaintiff gets up at 8:30 or 9:00 in the morning. (AR 49.) Plaintiff has a bowl of cereal for breakfast every morning. (AR 51.) She will watch some television until 11:00 a.m. and do some things around the house. (AR 49-50.) She has trouble concentrating so she will only do something for about fifteen minutes and then has to stop. (AR 49-50.) She will do something else and then go back later and finish the other task. (AR 50.) She can clean half a room and then has to rest for a couple hours before she goes back to finish. (AR 58.) There are days when Plaintiff spends the majority of her day sitting in her chair. (AR 58.) She will get up and go smoke a cigarette, but will spend up to eight hours in her chair. (AR 59.) She will have one of those days once every two weeks. (AR 60.)

Plaintiff gets irritated with people pretty easily and she does not drive long distances for that reason. (AR 60.) She gets anxious and angry. (AR 60.) Plaintiff has gone to the grocery store and had to leave without her purchase, but it has been a long time since that happened and that is why she goes shopping with her husband. (AR 61.) Within the last month she has had to leave the store and have her husband finish the shopping because she feels like she is getting overcrowded. (AR 61.) It especially happens when they are shopping at Costco or Sam's Club because there are too many people and carts everywhere. (AR 61.) Sometimes Plaintiff will just wait in the car. (AR 61.) They will go to the store in the middle of the day because there are not that many people there. (AR 62.)

Plaintiff does laundry, takes out the trash, and cooks. (AR 50, 51.) She does not leave the house much unless she has errands to run. (AR 50.) She pays the bills, does some gardening, and helps take care of their two dogs. (AR 50, 51.) Plaintiff has a hard time being in crowds so she does not go to church or participate in group activities or organizations. (AR 53.) She will go to church once a month and sit in the back. (AR 54.) Her church is very large, about 300 people. (AR 53.) Once a week, Plaintiff will go grocery shopping with her husband. (AR 53.) She will go to the convenience store by herself maybe once a week to pick up something. (AR 53.)

///

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.
- Plaintiff has not engaged in substantial gainful activity since her alleged onset date of September 28, 2011.
- Plaintiff has the following severe impairments: anxiety disorder and panic disorder with agoraphobia.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertion levels but is limited to performing simple, routine tasks with frequent contact with the public and must be allowed to work off task 5 percent of the workday one to two times per week.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on March 31, 1971, and was 40 years old, which is defined as a younger individual on the alleged onset date.
- Transferability of job skills is not material to the disability determinations because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not she has transferrable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in the economy that exist in significant numbers that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act, from September 28, 2011, through the date of the decision.

(AR 10-18.)

/ / /

/ / /

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by only adopting part of Dr. Muse's opinion and by improperly disregarding Plaintiff's husband's testimony. Defendant responds that the ALJ is not required to adopt all of the limitations opined by Dr. Muse and the ALJ properly considered the medical evidence in the record and explained the weight given to each opinion and adopted those portions of the opinion that were supported by the medical evidence. Defendant also argues that the ALJ provided germane reasons to reject the lay witness testimony. Plaintiff replies that her argument is that the ALJ did not provide clear and convincing reasons to reject the opinion of Dr. Muse. Plaintiff further argues that the lay witness testimony was consistent with the medical record; and therefore, the reason provided by the ALJ is not supported by substantial evidence in the record. Plaintiff seeks remand for further proceedings.

**A.     Dr. Muse's Opinion**

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater

weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

The ALJ gave substantial and controlling weight to the July 7, 2013 opinion of Dr. Muse, Plaintiff's treating psychologist from March 16, 2012 through January 16, 2013. (AR 15.) Dr. Muse opined that at such time that Plaintiff's symptoms remit and/or are minimal and do not increase with attempts to reenter the work force, Plaintiff would be able to return to employment with the recommendation that it not be in a highly stressful or pressured job environment. (AR 330.) The ALJ noted that on medication, Plaintiff's symptoms were improved and controlled. (AR 15.) Her mental status examinations were generally normal except for some anxiety and mild decrease in concentration and memory. (AR 15.)

The ALJ gave little weight to Dr. Muse's assessment that Plaintiff had poor ability to

maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance and complete a normal workday and workweek without interruptions from psychologically based symptoms finding them too restrictive and inconsistent with the medical evidence of record. (AR 15.) The ALJ again noted that the mental status examinations were generally normal except for anxious mood, mildly to moderately impaired concentration, and mildly impaired memory, and that Plaintiff's symptoms were controlled by medication and that Plaintiff was offered employment. (AR 15.)

While there is substantial evidence in the record to support the ALJ's findings that Plaintiff had generally normal mental status examinations (AR 378, 379, 380, 382, 384, 386, 389, 392), the medical record does note continued anxiety (AR 378, 380, 382, 384, 386, 389, 392). The record notations that Plaintiff reported she continued to have anxiety and the findings of anxiety in the record do not support the ALJ's findings that the medical record is inconsistent with Dr. Muse's opinion. Trevizo v. Berryhill, __ F.3d ___, 2017 WL 2925434, at *8 (9th Cir. July 10, 2017).

The Commissioner points to Plaintiff's continual representations that she was improving on medication and argues that the reports of anxiety were not observations by doctors, but Plaintiff's self-reports which alone cannot support an award for disability benefits. It is true that the ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that have been properly discounted. Fair v. Bowen, 885 F.2d 597, 605 (1989). Dr. Muse's opinions do appear to be based on Plaintiff's subjective complaints, for example, Dr. Muse's report states that "[a]s of Jan '13 client reported anxiety in the morning & "some" afternoons & in crowded situations." (AR 326.) Dr. Muse's June 4, 2012 opinion quote's Plaintiff's reports of her symptoms. (AR 308-310.) However, the ALJ did not give this as a reason for rejecting Dr. Muse's findings. While the Court may draw reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 775 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

Plaintiff argues that the ALJ's limitations to simple routine tasks and the adopted limitation of 5 percent off task shows that the ALJ considered the medical evidence and assessed a residual functional capacity assessment that is consistent with Plaintiff's limitations in the record.  However, Dr. Muse opined that Plaintiff would be able to return to work when her symptoms remit and/or are minimal and do not increase with attempts to reenter the work force.  While there may be evidence in the record to demonstrate that Plaintiff's symptoms have improved, the ALJ did not address the evidence in the record which shows that her symptoms had resolved to the extent that they would not increase with her attempt to reenter the workforce.

The ALJ also considered that Plaintiff had been offered employment, however she reported that she did not take the positions because as the time approached to return to work her anxiety worsened and she was unable to take the offered jobs.  (AR 45, 294.)  The fact that Plaintiff was offered jobs which she did not take is not a legitimate and specific reason to reject Dr. Muse's opinion.

The Court finds that the ALJ erred by failing to provide specific and legitimate reasons to reject the more restrictive findings of Dr. Muse.

**B.	Third Party Testimony**

Plaintiff also argues that the ALJ improperly rejected the third party testimony of her husband.  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  Stout, 454 F.3d at 1053; 20 C.F.R. § 404.1513(d)(4).  "Lay witness testimony is competent evidence and cannot be disregarded without comment."  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony.  Stout, 454 F.3d at 1056.  ).  If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

The ALJ considered the third party report of Plaintiff's husband, Gary Anderson, which was completed on May 31, 2012.  (AR 16, 201-208.)  The ALJ found that the third party report

does not establish that Plaintiff is disabled. (AR 16.) The ALJ rejected his testimony because Mr. Anderson is not medically trained to make exacting observations as to the frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of medical signs and symptoms, or of the frequency intensity of unusual moods or mannerisms, and found that this made the accuracy of his statement questionable. (AR 16.) The parties seem to agree that this is not a legitimate reason to reject Mr. Anderson's testimony. (Def. Opp. To Pl.'s Opening Brief 14, ECF No. 18; Pl.'s Reply Brief 3, ECF No. 19.)

The ALJ further found that Mr. Anderson's statements cannot be given significant weight because they were inconsistent with opinions and observations by medical doctors in this case. (AR 16.) The ALJ specifically noted that mental status examinations were generally normal except for mildly to moderately impaired concentration and mildly impaired memory and that that medications improved Plaintiff's conditions. (AR 16.)

Mr. Anderson reported that Plaintiff spends her day doing light housework, running errands, watching television, and playing computer games. (AR 201, 205.) She walks once a week. (AR 205.) Plaintiff feeds, cleans up after, and bathes her two dogs. (AR 202.) Her husband also shares in the care of the dogs. (AR 202.) Plaintiff gets up at least once every night. (AR 202.) She has no problem with her personal care. (AR 202.) Plaintiff prepares complete meals almost daily. (AR 203.)

She does laundry and light yard work but it takes her longer and she has problems doing them regularly. (AR 203.) She gets things done but some days seems to have no motivation. (AR 203.) Plaintiff goes outside when she needs to and is able to drive and can go out alone. (AR 204.) Plaintiff shops for clothing and food in stores and on line. (AR 204.) Plaintiff does not like to stay in stores for long periods, especially if there are a lot of people. (AR 204.) Plaintiff has no problems handling money. (AR 204.) Plaintiff has breakfast with her father every other week and has friends over to watch television one to two times a week. (AR 205.) Plaintiff's condition affects her talking, memory, completing tasks, and concentration. (AR 206.) At times, Plaintiff cannot remember what she wanted to say and her ability to focus for any length of time is affected. (AR 206.) Plaintiff has to write things down to remember what to

1  do. (AR 206.) Plaintiff's ability to pay attention is diminished. (AR 206.) She usually finishes
2  what she starts, but not always. (AR 206.) Plaintiff can follow spoken instructions fine, but may
3  need to write them down to remember. (AR 206.) Plaintiff gets along fine with authority
4  figures. (AR 207.) She handles stress poorly and needs medication. (AR 207.) Plaintiff's
5  ability to handle changes in routine is fair but she prefers a set routine. (AR 207.) When
6  Plaintiff first became ill she would not leave the house or drive but her medication has helped her
7  overcome this. (AR 207.)

When Plaintiff was first ill she had to take medications just to get in the car to be driven to doctor appointments. (AR 208.) After treatment and medication, Plaintiff is able to lead a semi-normal life but most days is not able to get anything done before noon and she cannot be around crowds. (AR 208.) Plaintiff is much better than when her attacks began, but is not the same as she was before. (AR 208.)

Here, the Court finds that the medical record is not inconsistent with the third party report. Mr. Anderson reported that his wife leads a generally active life but has some limitations in concentration and occasionally has difficulty remembering things. This is consistent with the mild to occasional moderate findings in the medical record. The ALJ failed to provide germane reasons to reject the lay witness testimony, such as Plaintiff's documented activities as discussed below.[2]

### C. Remand for Further Proceedings

The Court has the discretion to remand a case for either an award of benefits or for additional evidence. Smolen, 80 F.3d at 1292. The remand should be for "an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may

---

[2] The Court notes that the Commissioner has not argued that the RFC is consistent with Mr. Anderson's reports of Plaintiff's abilities and limitations.

13

be." Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).

Here, there is evidence in the record to contradict Plaintiff's allegations that her anxiety and panic disorder with agoraphobia preclude her from working. Plaintiff contends that her condition affects her memory, concentration, and ability to complete tasks. (AR 217.) Although there is evidence that Plaintiff takes some time in the morning to get started with her day, Plaintiff does housework, goes to doctor appointments and runs errands, shops, makes herself meal and prepares dinner for her family daily, and spends most of her day watching television, playing with her dogs, or playing computer games, (AR 208, 212, 216). Plaintiff cleans, does laundry, vacuums, and waters. (AR 214.)

While Plaintiff contends that she is unable to work due to her anxiety and panic attacks with agoraphobia, Plaintiff goes out one to two days a week to do errands or keep appointments and on the weekends will do one or two things with her husband. (AR 215.) They go to Costco or Sam's Club during midday to avoid the crowds. (AR 61-62.) Plaintiff is able to drive and can go out alone but prefers to have company. (AR 215.) Plaintiff walks once a week with her sister and goes hiking about twice a month. (AR 216.) About once a week, Plaintiff has family dinners at the home of family members and has friends come over to watch sporting events. (AR 216.) Plaintiff regularly goes to the grocery store, post office, and doctor's appointments. (AR 216.)

On August 14, 2012, Plaintiff reported that she tried to take a summer class at Cuesta College, but the class was cancelled. (AR 239.) Plaintiff also reported that she submitted an application to volunteer at the Salvation Army. (AR 239.) Plaintiff reported in a disability report (after August 22, 2012) that she attends church on Sunday mornings and volunteers at church for about an hour a week. (AR 252, 255.) In January, Plaintiff and her husband visited some friends in Havasu City, Arizona. (AR 34.) They travelled by car and it took about seven or eight hours to get there staying three to four days. (AR 34-35.) While they were there, they went to a big antique and collectible show and a swap meet. (AR 35.)

A plaintiff is not entitled to benefits unless she is disabled. Strauss, 635 F.3d at 1138. While Plaintiff has demonstrated that she has panic attacks, the records demonstrate that she has

14

had good results with treatment and is engaged in a wide range of activities that demonstrate her ability to function outside her home. In light of the conflicts in the record, there is crucial testimony that is required to be addressed by the ALJ to determine whether an award of benefits is appropriate in this matter. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014). The Court finds that this action should be remanded for further proceedings.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ erred in addressing the opinion of Dr. Muse and in considering lay witness testimony. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this action is remanded back to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __July 28, 2017__

UNITED STATES MAGISTRATE JUDGE